UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIKA FIELDS,

              Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.

_____/

Civil Action No.: 18-10572
Honorable Paul D. Borman
Magistrate Judge Elizabeth A. Stafford

### REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 11, 15]

Plaintiff Erika Fields appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) and supplemental social security income benefits (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is not supported by substantial evidence, and thus **RECOMMENDS** that:

- Fields's motion [ECF No. 11] be **DENIED**;

- the Commissioner's motion [ECF No. 15] be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

I. BACKGROUND

A. Background and Disability Applications

Fields was born on March 23, 1969, making her 46 years old on her alleged onset date of May 12, 2015. [ECF No. 8-2, Tr. 21; ECF No. 8-5, Tr. 154]. She submitted applications for disability benefits in September 2015 and was insured for DIB purposes through June 30, 2020. [ECF No. 8-2, Tr. 21; ECF No. 8-5, Tr. 148, 153]. She completed three years of college and has past work as an order clerk, small production assembler, license clerk and sales attendant. [ECF No. 8-2, Tr. 30; ECF No. 8-6, Tr. 179-80]. She alleged disability due to multiple sclerosis (MS), arthritis, depression, vertigo, floaters in eyes, blurry vision, stiff hands and fingers, weakness in legs, numbness in feet and on the left side, right side weakness, tiredness, headaches and tightness in chest. [ECF No. 8-6, Tr. 178].

After the Commissioner denied her disability application initially, Fields requested a hearing, which took place in December 2016, during which she and a vocational expert (VE) testified. [ECF No. 8-2, Tr. 37-54]. In a March 2017 written decision, the ALJ found Fields to be not disabled. [*Id.*, Tr. 18-36]. The Appeals Council denied review, making the ALJ's

decision the final decision of the Commissioner, and Fields timely filed for judicial review.  [*Id.*, Tr. 1-3; ECF No. 1].

> **B.   The ALJ's Application of the Disability Framework Analysis**

DIB and SSI are available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1]  Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c); § 920(c).

3

set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Fields was not disabled. At the first step, she found that Fields had not engaged in substantial gainful activity since her alleged onset date. [ECF No. 11-2, Tr. 21]. At the second step, the ALJ found that Fields had the severe impairments of congestive heart failure, depression, anxiety, osteoarthritis and hypertension. [*Id.*]. Next, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.,* Tr. 22].

Between the third and fourth steps, the ALJ found that Fields had the RFC to perform sedentary work as defined by 20 C.F.R. §§ 404.1527(a),

4

416.927(a), with the additional limitations of:

> [U]nskilled [work] with one, two, or three step instructions in a non-fast rate production environment, defined as involving no conveyer belt or assembly line work. The claimant requires work in a low stress environment, defined as having only occasional changes in the work setting. She can lift and/or carry five pounds frequently and ten pounds occasionally (from very little up to 1/3 of an eight-hour workday). The claimant can stand and/or walk (with normal breaks) for about two hours in an eight-hour workday, but can do so for only fifteen minutes at one time. She uses a cane to ambulate. The claimant can sit (with normal breaks) for about six hours in an eight-hour workday, but can do so for only fifteen minutes at one time. She can perform pushing and pulling motions with the upper and lower extremities within the aforementioned weight restrictions for no more than two-thirds of an eight-hour workday. The claimant can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching for no more than two-thirds of an eight-hour workday. She needs to avoid hazards in the workplace such as moving machinery and unprotected heights. The claimant requires job responsibilities that do not include the use of hand-held vibrating or power tools. She needs to be restricted to a work environment with stable temperatures, stable humidity, and good ventilation. The claimant can perform each of the following postural activities occasionally: climbing stairs with handrails, balancing, stooping, and crouching, but needs to avoid climbing, kneeling, and crawling. Finally, she requires work that, in addition to any regularly scheduled breaks, allows her to be off task up to 10% of an eight-hour workday due to the symptoms from her impairments and/or the ancillary effects of treatments for such impairments.

[*Id.*, Tr. 25-26]. At the fourth step, the ALJ concluded that Fields could not perform her past relevant work. [*Id.,* Tr. 30]. At the final step, after considering Fields's age, education, work experience, RFC, and the

5

testimony of the VE, the ALJ determined that Fields could perform work in occupations such as ticket counter, telephone information clerk, and charge account clerk, which exist in significant numbers in the national economy. [*Id.*, Tr. 31].

## II. ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Fields argues that the ALJ failed to give good reasons for discounting her treating physician's opinions, and that the ALJ's subjective symptom

evaluation was not supported by substantial evidence. The Court disagrees and recommends that the ALJ's decision be affirmed.

**B.**

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723.

An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). This procedural safeguard not only permits "meaningful

appellate review," but also ensures that claimants "understand the disposition of their cases." *Rogers*, 486 F.2d at 242-43 (internal quotation marks and citation omitted).

As the ALJ noted, Fields saw neurologist Punitha Vijayakumar, M.D., in July 2014 for a depression screening and neurological examination. [ECF No. 8-2, Tr. 26-27; ECF No. 8-7, Tr. 261]. The exam revealed normal cortical functions, cranial nerves, muscle mass, tone, and strength; normal sensory results and reflexes; downgoing plantars bilaterally; absent cerebellar signs and tremors; intact coordination; and normal gait, station and speech. [ECF No. 8-7, Tr. 261]. Dr. Vijayakumar reviewed a December 2013 brain MRI, assessed Fields as having MS, and scheduled a follow up appointment in four months. [*Id.*, Tr. 262]. At her next visit in January 2015, she reported numbness in hands, left-sided weakness, feeling tired and not sleeping well. [*Id.*, Tr. 316]. She was still working and her exam was again normal other than "mild weakness over the hand grip." [*Id.*].

In March 2015 Fields presented to the Oakwood Annapolis Hospital emergency room with numbness in both legs that she had felt for the past week. [ECF No. 8-7, Tr. 291]. She stated that it felt like a previous MS episode, except without typical dizziness, and she denied any weakness or

8

focal deficits.  [*Id.*].  She went to the emergency room again in July and October 2015, but for tooth pain.  [*Id.*, Tr. 277, 293].  In all three instances, she had normal examination results and was discharged the same day.  [*Id.*, Tr. 281-82, 292-93, 296].

Fields next saw Dr. Vijayakumar in February 2016, reporting left-sided weakness as well as intermittent left leg and back pain.  [*Id.*, Tr. 314].  On examination, Fields had normal strength except "mild weakness over the hand grip" and "left leg weakness," "decreased pinprick sensation over the left side including the face," and "mild drag on the left leg noted."  [*Id.*].  Fields was prescribed a cane for ambulation.  [*Id.*, Tr. 308].

That March, a brain MRI revealed extensive multiple sclerosis plaque involving periventricular white matter.  [*Id.*, Tr. 319].  In July 2016 Fields returned to Dr. Vijayakumar complaining of bowel problems and increased urination, and she had moved to the floor level of her house but was using her cane and had not fallen.  [*Id.*, Tr. 312].  She complained of increased right-hand weakness as well.  [*Id.*].  Her examination results were identical to those from February 2016 except that the drag on the left leg was upgraded to "moderate."  [*Id.*].  She declined any additional medications and continued Rebif for MS and Celexa for depression.  [*Id.*, Tr. 312-13].

9

Dr. Vijayakumar supplied a medical opinion in July 2016 when Fields last saw her. [*Id.*, Tr. 326-27]. She opined that Fields could occasionally lift less than ten pounds, frequently lift ten pounds, stand and walk less than two hours in a normal work day, sit for about two hours in a work day, can only sit for 30 minutes or stand for 15 minutes before changing positions, and must walk around every ten minutes for a five-minute period. [*Id.*, Tr. 326]. She also opined that Fields would need to be able to "shift *at will* from sitting or standing/walking." (emphasis in original) [*Id.*]. Fields would also need to lie down at unpredictable intervals every 30 minutes and never twist, stoop, crouch, or climb ladders, with only occasional climbing of stairs. [*Id.*, Tr. 326-27].

Dr. Vijayakumar found that Fields' reaching, fingering, and pushing/pulling were affected by her physical impairment, but not her handling (gross manipulation) or feeling. [*Id.*, Tr. 327]. She stated that Fields was "not able to sustain or have repetitive movements" due to her MS, and she checked "avoid all exposure" next to every environmental hazard listed. [*Id.*]. Lastly, she found that Fields would be absent from work more than four days per month due to her impairments or treatment. [*Id.*].

10

The ALJ afforded Dr. Vijayakumar's opinion little weight, finding them unsupported by the objective evidence including Dr. Vijayakumar's own findings from Fields' appointments. [ECF No. 8-2, Tr. 27]. He also found that Dr. Vijayakumar's limitations were heavily influenced by Fields' subjective reporting in an uncritical manner. [*Id.*]. Finally, he noted that the decision of whether an individual is "disabled" is reserved to the Commissioner. [*Id.*]. *See Brock v. Comm'r of Soc. Sec.*, 368 F. App'x 622, 625 (6th Cir. 2010) (issue of whether claimant is disabled is reserved for the Commissioner).

Fields takes issue with the ALJ's articulation of his reasons for rejecting the opinion. Though the ALJ found that the opinion conflicted with the evidence, "including the doctor's own findings, as noted above in exhibits 1F, 4F, and 5F," [*Id.*], Fields argues that he does not sufficiently explain what the conflicting evidence is or why it does not support the opinion. The Court disagrees. In the paragraphs preceding the analysis of opinion evidence, the ALJ summarized the record evidence pertaining to Fields' physical impairments, consisting largely of Dr. Vijayakumar's office records, noting the consistently normal or negative results as to balance, dizziness, headaches, strength, pain, fatigue, reflexes and gait. [*Id.*, Tr. 26-27]. He also noted the findings of some leg numbness, some left leg

weakness, consistently mild weakness over the hand grip, and mild to moderate drag on the left leg. [*Id.*].

The ALJ's summarization of the objective record does not differ substantially from that of Fields' brief. [*Compare id. and* ECF No. 11, PageID. 374-76]. And Fields declines to point to any record evidence, objective or subjective, that supports Dr. Vijayakumar's opinion or conflicts with the ALJ's findings, as is her burden. [*See* ECF No. 11, PageID.376-78]. The Court has no obligation to scour the record on Fields' behalf to develop her arguments. *Karger v. Comm'r of Soc. Sec.*, 414 F.App'x 739, 754 (6th Cir. 2011). And there is no apparent error with the ALJ's analysis; the evidence cited by all parties supports a finding that Fields is not disabled as her impairments appear to be generally mild and controlled as summarized above. As the Commissioner noted, during the relevant two-year period, Fields only visited her doctor for MS-related symptoms twice, had an MRI and had two dental-related emergency room visits. [ECF No. 15, PageID.400].

Fields is correct that an ALJ is required to articulate good reasons for not giving a treating physician controlling weight to permit "meaningful appellate review" and ensure that claimants "understand the disposition of their cases." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.

2004) (internal quotation marks and citation omitted). But it is also true that the ALJ's decision must be read as a whole when determining whether he has sufficiently articulated good reasons for discounting the weight given to Dr. Vijayakumar's opinion. *Vitale v. Comm'r of Soc. Sec.*, No. 16-12654, 2017 WL 4296608, at *2 (E.D. Mich. Sept. 28, 2017). The Court finds that the ALJ did sufficiently articulate good reasons for his treatment of Dr. Vijayakumar's opinion.

## C.

Fields also takes issue with the ALJ's subjective symptom evaluation. The ALJ found that Fields' "allegations, including exertional, non-exertional limitations, the need to lie down, and the like . . . are not entirely consistent with the evidence of record." [ECF No. 8-2, Tr. 29]. The ALJ's decision postdates Social Security Ruling 16-3p, which eliminates use of the term "credibility" from official policy and clarifies that a "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, at *1. *See also Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017), adopted, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018) (noting that under SSR 16-3p, "an ALJ must focus on the consistency of an individual's

13

statements about the intensity, persistence and limiting effects of symptoms, rather than credibility.").

Despite the linguistic clarification, courts continue to rely on pre-SSR 16-3p authority providing that the ALJ's credibility determinations are given great weight. *See, e.g., Kilburn v. Comm'r of Soc. Sec.*, No. 1:17-CV-603, 2018 WL 4693951, at *7 (S.D. Ohio Sept. 29, 2018); *Duty v. Comm'r of Soc. Sec.*, No. 2:17-CV-445, 2018 WL 4442595, at *6 (S.D. Ohio Sept. 18, 2018). Thus, an ALJ's subjective symptom evaluation should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241.

Fields argues that the ALJ mischaracterized the evidence, pointing first to the January 2015 record of her visit to Dr. Vijayakumar and noting that she complained of feeling tired and "down, depressed, or hopeless," that her hands were numb, she felt tired with repetitive work, and she was not sleeping well. [ECF No. 8-7, Tr. 316]. These complaints are reflected in the record, but so are those cited by the ALJ of denying balance difficulty, dizziness and headache, loss of strength, pain, tingling, numbness, fatigue, gait abnormality and shortness of breath. [ECF No. 8-2, Tr. 27, citing *id*.]. Going further, the ALJ accurately summarized all of

14

Fields' objectively measured findings from that doctor visit, which other than her "mild weakness over the hand grip" were entirely normal, and cited her "depressed mood and difficulty sleeping" when he discussed Fields' mental impairments. [ECF No. 8-2, Tr. 28].

Fields' brief disregarded the objective examination portions of Dr. Vijayakumar's notes, which are accurately summarized throughout the ALJ's opinion, and instead cited to her subjective complaints within those notes. To the extent that Fields subjective complaints conflict with the ALJ's description of the evidence, they also conflict with the objective results themselves, supporting the ALJ's justification for finding her allegations not entirely consistent with the record.

Fields also missed the "Review of Systems" column of Dr. Vijayakumar's notes, where she does in fact deny loss of strength, pain (at times), tingling, numbness, fatigue, and gait abnormality. [ECF No. 8-7, Tr. 312, 314, 316]. And though she faults the ALJ for not identifying the "wide range of activities" he found that Fields could perform, the ALJ in fact stated that these activities were "as noted above finding four." [ECF No. 8-2, Tr. 29]. In finding four, the ALJ listed activities Fields had reported, including transporting her daughter to and from school, preparing simple meals, watching television, doing laundry and dishes, driving, shopping,

managing her finances, caring for a companion dog, and following simple instructions. [ECF No. 8-2, Tr. 25]. She was also able to go out alone, attend her daughter's school events, go to the movies, attend church, and get along with authority figures." [*Id.*].

As to the ALJ's treatment of Fields' mother's third-party function report, she objects that it was "dismissed primarily because her mother filled out the form." [ECF No. 11, PageID. 381]. Though the ALJ did mention the bias of "loyalties of family," he also noted that it was a lay opinion based on casual observation rather than objective medical evidence and testing, and that it was not consistent with the objective medical evidence of record. [ECF No. 8-2, Tr. 28].

According to 20 C.F.R. § 404.1513(d)(4), the ALJ may consider non-medical sources including family members and friends, but is not required to do so. *See Holbrook v. Astrue,* No. CIV.A. 07–78–JBC, 2008 WL 4000423, at *3 (E.D.Ky. Aug. 25, 2008) ("The regulation clearly states that the ALJ may take non-medical sources into consideration, not that he is required to do so."). And critically, an ALJ's failure to consider lay source evidence cannot be more than harmless error unless it would affect the disability decision and is fully supported by the reports of treating physicians. *Maloney v. Comm'r of Soc. Sec.,* 480 F. App'x 804, 810 (6th

16

Cir.2012); *Simons v. Barnhart,* 114 F. App'x 727, 733 (6th Cir.2004).  Thus, Fields has failed to show an error that would require remand of this matter.

### III.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Fields's motion for summary judgment be [ECF No. 11] be **DENIED**; that the Commissioner's motion [ECF No. 15] be **GRANTED**; and that the ALJ's decision be **AFFIRMED**.

|  |  |
|---|---|
|  | s/Elizabeth A. Stafford |
|  | ELIZABETH A. STAFFORD |
| Dated: January 11, 2019 | United States Magistrate Judge |

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 11, 2019.

                                              s/Marlena Williams
                                              MARLENA WILLIAMS
                                              Case Manager